MOORE, Judge.
 

 Michelle Long (“the former wife”) appeals from a judgment of the Geneva Circuit Court declining to require Leslie Long
 
 *366
 
 (“the former husband”) to pay her the amount of the outstanding indebtedness on the parties’ former marital home that existed at the time that home was destroyed by a fire.
 

 We affirm.
 

 Facts and Procedural History
 

 On October 20, 2005, the parties were divorced by a judgment of the Geneva Circuit Court; that judgment incorporated a settlement agreement entered into between the parties. That agreement provided, in pertinent part:
 

 “11. The marital home ... should be awarded to the [former wife] subject to the mortgage [indebtedness], covering same and [the former wife] and [the former husband] should be ordered to pay such [indebtedness] as follows:
 

 “A. [The former wife] shall pay the mortgage [indebtedness] to the Citizens Bank,
 
 [1]
 
 P.O. Box 190, Geneva, Alabama in the amount of $150.98 per month, covering same and [the former "wife] shall pay such [indebtedness] in the manner that it becomes due and payable and save [the former husband] harmless.
 

 “B. [The former husband] shall pay the mortgage [indebtedness] to GMAC Mortgage, P.O. Box 780, Waterloo, IA 50704 in the amount of $332.69 per month, covering same and [the former husband] shall pay such [indebtedness] in the manner that it becomes due and payable and save [the former wife] harmless.”
 

 Pursuant to the divorce judgment, the former husband made the monthly mortgage payments to GMAC Mortgage, LLC (“GMAC”). As part of the obligation to GMAC, the former husband also maintained insurance on the home. Not long after the parties’ divorce, the homeowner’s insurer canceled the policy covering the marital home due to excessive claims. The former husband testified that the former wife contacted him about the cancellation and that he then telephoned GMAC to request that GMAC apply for lenders-placed insurance to cover the home. According to the former husband, he informed the former wife that, if she wanted additional insurance to cover the contents of the marital home, she would have to obtain it herself. The former wife maintains that the former husband instructed her to obtain insurance to cover the marital home as well.
 

 On October 9, 2007, the former wife obtained insurance covering both the marital home — coverage of $60,000 — and the contents of the home — coverage of $30,-000 — from Baldwin Mutual Insurance Company. Her insurance agent informed the former wife that the premium would be paid from the mortgage escrow account maintained by the former husband. The former wife admitted that she had not requested the permission of the former husband to use his escrow account and that the divorce judgment did not require the former husband to pay the costs of such insurance. The former husband testified that he had not given the former wife authorization to use the funds in his escrow account to purchase the insurance. The former husband further testified that he was unaware that the former wife had procured insurance covering the marital home and its contents, instead believing that GMAC was replacing the insurance as he had requested.
 

 Shortly after the former wife obtained the insurance, a fire destroyed much of the
 
 *367
 
 marital home and its contents. Baldwin Mutual filed an interpleader action in the Baldwin Circuit Court, depositing the $90,000 in insurance proceeds with the clerk of the court. As a result of that action, the clerk distributed $21,734.43 of the proceeds to GMAC, which satisfied the mortgage on the marital home, and distributed the remainder of the proceeds to the former wife. The former wife filed a cross-claim against the former husband alleging that the payment to GMAC should not have relieved him of his obligations under the divorce judgment. The case was transferred to the Geneva Circuit Court (“the trial court”) to resolve that issue as well as other issues relating to the parties’ divorce.
 

 At trial, the former wife testified that she and the former husband had listed the value of the marital home as $24,723.85 on a report they had filed in their bankruptcy case in August 2005. The former husband, however, testified that the value of the former marital home when the parties initiated the bankruptcy proceeding was $22,900. The former wife testified that the tax-assessed value of the marital home was $22,900 in 2005 and 2006 and that, in 2007, that value had increased to $27,900. The trial court ultimately ruled that the former husband had satisfied his obligations to the former wife under the divorce judgment. The former wife appealed.
 
 [2]
 

 Analysis
 

 On appeal, the former wife argues that the trial court erred in failing to require the former husband to pay her the $21,734.43 that was paid to GMAC. The former wife cites five cases in support of reversing the trial court’s judgment. We discuss them each in turn.
 

 In
 
 Johns v. Johns,
 
 473 So.2d 517 (Ala.Civ.App.1985), the parties’ divorce judgment provided:
 

 “ ‘That all right, title and interest in and to all household furniture, appliances and effects owned by the parties and 1982 Cutlass stationwagon or any other automobile the parties may trade said vehicle for, is hereby divested out of the [husband] and vested in the [wife]. [The husband] is ordered and directed to be responsible for and pay all outstanding mortgages and indebtedness against said personal property....
 

 473 So.2d at 518. After the divorce judgment was entered, the Cutlass station wagon was destroyed while being driven by the husband.
 
 Id. A
 
 few days later, the husband told the wife that he was purchasing a Volkswagen Rabbit automobile and told her to see if she liked it.
 
 Id.
 
 The former wife approved of the Volkswagen; the husband purchased it but then delivered his Buick Opel for her to use.
 
 Id.
 
 The wife did not accept the Opel; she “borrowed” the Volkswagen from the husband and never returned it.
 
 Id.
 
 The husband requested the trial court to relieve him of the payments for the Volkswagen.
 
 Id.
 
 After a hearing, the trial court ordered the husband to pay the wife the value of the Cutlass at the time it was destroyed and ordered the wife to return the Volkswagen to the husband or, it ordered in the alternative, the husband could allow the wife to keep the Volkswagen and the husband would pay the indebtedness associated therewith.
 
 Id.
 
 The husband appealed; this court affirmed, reasoning:
 

 “ ‘Judgments are to be construed like other written instruments, and, if there is any uncertainty, the court must construe them so as to express the intent of
 
 *368
 
 the parties.’
 
 Allen v. Allen,
 
 386 So.2d 1176 (Ala.Civ.App.1980). It is clear from the record that the parties intended that [the husband] would provide [the wife] with the 1982 Cutlass or another car without indebtedness to her. Therefore, the trial court’s order for [the husband] to pay for a substitute automobile, in lieu of the automobile he wrecked, was not a modification of a property division but to enforce compliance with the express intent of the parties in their agreement and the judgment of the court.”
 

 473 So.2d at 519.
 

 In
 
 Marshall v. Marshall,
 
 582 So.2d 571 (Ala.Civ.App.1991), the divorce judgment awarded the wife an automobile and ordered the husband to pay the indebtedness associated with that automobile. 582 So.2d at 572. The wife was subsequently involved in an automobile accident, and the automobile was totally destroyed.
 
 Id.
 
 “A third party’s insurance company settled the damage claim for $14,828.33”; the lien-holder on the debt associated with the automobile received $13,519.88, and the wife received $1,308.45.
 
 Id.
 
 The trial court entered a judgment requiring the husband to pay the wife the amount of money he would have been required to pay to the lienholder had that debt not been discharged.
 
 Id.
 
 The husband appealed. On appeal, this court quoted with approval the trial court’s reasoning:
 

 “In the instant case, it is clear that the original intent of the parties was that the ... Wife would have the Lincoln automobile free of any indebtedness, and that the ... Husband would pay the indebtedness secured by said automobile in monthly installments in accordance with the contract of debt.... Obviously, the clear intent of the parties at the time of the agreement was that the ... Wife would be the owner of the automobile and, as a part of the property settlement, received that asset at the fair market value thereof at the time of the divorce without the indebtedness being deducted from said value. The ... Husband assumed a liability and agreed to pay the same in full.... The Court cannot find any interpretation of the parties’ agreement by which it can be said that the intent of the parties would be that if an accident occurred under the present circumstances, and the indebtedness was paid by a third party, ... the ... Husband should be relieved in full of his debt and ... the ... Wife would lose virtually the entire value of the asset she received.”
 

 582 So.2d at 572-73. Based on that reasoning, this court determined that the trial court had not erred in requiring the husband to pay the wife the amount he would have been required to pay had the indebtedness not been discharged. 582 So.2d at 573.
 

 In
 
 Ravenel v. Ravenel,
 
 835 So.2d 1069 (Ala.Civ.App.2002), the divorce judgment required the wife to pay the outstanding indebtedness on a truck awarded to the husband. 835 So.2d at 1070. After the divorce judgment was entered, the truck was destroyed.
 
 Id.
 
 The wife ceased making payments toward the indebtedness owed on the truck, and the husband’s insurance company paid that debt. 835 So.2d at 1072. The husband requested the trial court to require the wife to pay him a sum equal to the indebtedness that was paid by his insurance company. 835 So.2d at 1071. The trial court denied the husband’s request, and he appealed. On appeal, this court reasoned:
 

 “[T]he plain language of the divorce judgment indicates that the trial court envisioned that the [husband] would receive the 1992 Mazda truck free and clear of all encumbering debt as of the
 
 *369
 
 September 1994 date of the divorce judgment. Moreover, the judgment directed the [wife] to ‘assume’ and ‘pay for’ the debt on the truck and to ‘indemnify’ and ‘hold [the husband] harmless’ for the debt. However, it was only through the efforts of the [husband] in securing and maintaining insurance coverage and making a claim for the loss of the vehicle upon its total loss that the indebtedness allocated to the [wife] was discharged. As between the two parties before the trial court in this case, the divorce judgment clearly requires the [wife], not the [husband], to discharge the debt on the Mazda truck. We, therefore, reverse the judgment denying the [husband’s] request that the [wife] be required to pay him an amount equal to the indebtedness on the truck as of the date the debt was discharged by the [husband’s] insurer.”
 

 835 So.2d at 1072-73 (footnote omitted).
 

 In
 
 Cox v. Cox,
 
 880 So.2d 461 (Ala.Civ.App.2003), the divorce judgment awarded the wife the marital home and ordered the husband to pay the indebtedness thereon. Several years later, the wife sold the former marital home for $100,000. 880 So.2d at 462. Using the proceeds from that sale, the wife paid $38,260.19 to satisfy the outstanding indebtedness on the former marital home and retained the remaining $56,028.74. 880 So.2d at 462-63. The wife petitioned the trial court seeking an order requiring the husband to pay the amount of the outstanding indebtedness on the former marital home at the time she sold the home. 880 So.2d at 462. The trial court denied the wife’s petition, determining “that the husband’s obligation ... to pay the indebtedness on the property no longer existed because the wife had sold the property.” 880 So.2d at 463. The wife appealed. On appeal, this court reasoned:
 

 “The divorce judgment in this case states that the wife ‘is awarded the home of the parties’ and that the husband is ‘to pay the outstanding indebtedness thereon.’ The plain language of the judgment gives the wife the ownership of the home, not merely the equity in the home as the trial court ruled. The plain language of the judgment also places on the husband the responsibility for paying the indebtedness owed on the property; it does not state, as the trial court attempts to construe it, that he is responsible for paying that indebtedness only as long as the wife does not sell the property. The trial court reads into the language of the judgment something that is not there, i.e., that the obligation of the husband to pay the indebtedness would be extinguished if and when the wife sold the property.
 

 “... Just as the availability of insurance proceeds in
 
 Johns, Marshall,
 
 and
 
 Ravenel
 
 did not relieve the latter party of the responsibility for paying that indebtedness, the availability of proceeds from the sale of the property in the present case does not relieve the husband of the responsibility for paying the indebtedness imposed upon him in the parties’ divorce judgment.”
 

 880 So.2d at 465.
 

 In
 
 Jackson v. Jackson,
 
 913 So.2d 1093 (Ala.Civ.App.2004), the divorce judgment awarded the wife possession of the parties’ former marital home during her lifetime but it provided that the property would remain jointly owned and that the husband would pay the first and second mortgages on the former marital home and would maintain insurance on the home. 913 So.2d at 1094. Shortly thereafter, the former marital home was destroyed by fire and the proceeds from a fire-insurance policy — $30,000 on the dwelling and
 
 *370
 
 $15,000 on the contents — were issued to the parties jointly.
 
 Id.
 

 The wife filed a petition requesting that the trial court “equitably distribute the [insurance] proceeds so as to effectuate the terms of the parties’ divorce judgment.”
 
 Id.
 
 The trial court entered a judgment determining “that the ... wife was entitled to the $15,000 [in] insurance proceeds that pertained to the contents of the house but that she was not entitled to any part of the $30,000” in insurance proceeds that pertained to the dwelling.
 
 Id.
 
 The trial court, instead, awarded the husband $6,383.99, the amount remaining after $23,666.01 was paid to satisfy the outstanding indebtedness on the former marital home. The wife appealed, arguing that the trial court had erred in not awarding her one-half of the $30,000 in insurance proceeds related to the destruction of the dwelling. 913 So.2d at 1095. This court, relying on
 
 Marshall, supra,
 
 and
 
 Cox, supra,
 
 agreed with the wife and, thus, reversed the judgment of the trial court. 913 So.2d at 1097.
 

 The common theme in each of the foregoing cases is that the divorce judgment required one former spouse to provide the other former spouse certain property, or at least a share of that property, free from any indebtedness. In each of those cases, the property had been destroyed or sold and the indebtedness on the property had been paid in full, relieving the debtor spouse of that debt. The nondebtor spouse, however, had received less than the value of the property that had been awarded to him or her, thus thwarting the intention of the divorce judgment to provide that spouse with an unencumbered asset. Unlike the cases previously discussed, in the present case the intent of the divorce judgment was fulfilled. Specifically, the former husband had discharged the mortgage indebtedness by paying the premium for the homeowners’ insurance, and, even after the mortgage indebtedness was discharged, the wife received insurance proceeds in an amount more than sufficient to compensate her for the value of the former marital home.
 
 [3]
 
 Thus, we conclude that the facts of the cases cited by the former wife are materially distinguishable from the facts of the present case and that the trial court correctly determined that the former husband had no further obligation pursuant to the parties’ divorce judgment.
 

 Conclusion
 

 Based on the foregoing, we affirm the judgment of the trial court.
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 [1]
 

 1. The former wife testified at trial that her father had obtained a mortgage from Citizens Bank secured by his own house and had loaned the proceeds from that mortgage to her and the former husband for them to purchase their house.
 

 [2]
 

 . The judgment did not fully resolve all the issues between the parties, so this court remanded the case for a final adjudication, which the trial court entered on December 22, 2009.
 

 [3]
 

 . The former wife testified that the marital home was valued at $27,900 and was insured for $60,000. Thus, after the $21,734.43 was paid to GMAC to retire the mortgage indebtedness, the former wife received an amount equaling more than the value of the home.
 

 Although the former wife testified that she still owed her father on the mortgage that he had taken out on his own house, the divorce judgment had required the former wife to pay that debt. In any event, the insurance proceeds were sufficient to pay the GMAC mortgage indebtedness and the loan to the former wife's father, and still leave the former wife with proceeds greater than the value the wife had assigned to the former marital home.